```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                         NORTHERN DIVISION


JACK D. RUBLE, II,                  )
                                    )
          Plaintiff,                )
                                    )
     v.                             )    No. 2:10 CV 24 DDN
                                    )
AMERICAN RIVER TRANSPORTATION       )
COMPANY,                            )
                                    )
          Defendant.                )
```

**MEMORANDUM AND ORDER**

This action is before the court on the motion of defendant American River Transportation Company for summary judgment. (Doc. 23.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 9.) Oral arguments were heard on June 16, 2011.

**I. BACKGROUND**

On March 30, 2010, plaintiff Jack D. Ruble, II commenced this action against his former employer, defendant American River Transportation Company. (Doc. 1.) Plaintiff alleges that defendant unlawfully terminated his employment when he attempted to exercise his rights under the Family and Medical Leave Act (FMLA). (Id.) Plaintiff seeks compensation for his lost wages, lost employment benefits, liquidated damages, attorney's fees, costs, and reinstatement or front pay through his retirement age. (Id.)

**II. MOTION FOR SUMMARY JUDGMENT**

Defendant argues that it is entitled to summary judgment because the FMLA does not authorize leave to care for grandparents, nor does it protect "mere visitation" of a family member suffering from a serious health condition. Defendant further argues that even if plaintiff's grandmother qualified under the FMLA and even if plaintiff provided care for his grandmother, plaintiff failed to provide adequate, timely notice of his need for FMLA leave. (Doc. 23.)

Plaintiff responds that his right to care for his grandmother was secured by the FMLA because his grandmother cared for him as a child. Plaintiff also responds that he timely notified the chief engineer, the ship's captain, and the personnel manager of the seriousness of his grandmother's illness, that he needed to go care for her, and that his grandmother raised him. (Doc. 26.)

Defendant replies that plaintiff did not actually say that his grandmother raised him. Defendant also replies that plaintiff said only that he wanted to go see his grandmother, and not that he needed to go care for her. Defendant further replies that plaintiff did not raise his request for FMLA leave in a timely manner. (Doc. 28.)

### III. STATEMENT OF UNDISPUTED FACTS[1]

On August 12, 1998, plaintiff began working for defendant as a deckhand.[2] (Doc. 1 at ¶ 4; Doc. 25 at ¶¶ 3, 6.) From August of 1998 to November of 2007, plaintiff held positions with defendant as a deckineer, oiler, assistant engineer, and chief engineer. (Doc. 1 at ¶ 5; Doc. 25 at ¶¶ 7, 8.) In November of 2007, defendant granted plaintiff's request to be demoted from a chief engineer to an assistant engineer. (Doc. 25 at ¶ 8.) As a result of his new position, plaintiff changed from working on the vessel Starfire to the vessel John H. Macmillian Jr. (John H). (Id.) The John H is a "live-on" vessel, which required plaintiff to stay aboard for 26 to 34 days at a time. (Id. at ¶¶ 12, 13.)

As an assistant engineer, plaintiff's duties included supporting the chief engineer, working with the chief engineer to avoid and to correct any mechanical failures, preparing and maintaining mechanical systems, and performing routine maintenance while aboard the John H. (Id. at ¶¶

---

[1]Defendant has admitted some of these facts solely for the purpose of its motion for summary judgment, but otherwise retained the right to contest the facts at trial. See Doc. 29. Thus, the court will consider these facts as admitted only in resolution of defendant's motion for summary judgment.

[2]Defendant operates, among other things, line boat vessels, used to help deliver the products of its parent company, Archer Daniels Midland Company. (Doc. 25 at ¶ 1.)

10, 11.) Plaintiff worked on rotating six-hour shifts with the chief engineer. (Id. at ¶¶ 14-16.) During his shifts, plaintiff also assumed some of the chief engineer's duties. (Id. at ¶ 17.) The chief engineer and the assistant engineer reported directly to the port engineer, Jason Porter. (Doc. 25 at ¶ 18.) As port engineer, Porter was responsible for overseeing all engineering aspects of defendant's vessels and for working with port personnel to obtain relief for engineers. (Id. at ¶ 19.)

## Defendant's Leave Policies

Defendant maintained its Administrative and Personnel Policies in an Operations Manual. (Id. at ¶ 21.) A copy of the Operations Manual was present in electronic form on board each of defendant's vessels, including the John H. (Id. at ¶¶ 21, 24, 25.) Plaintiff received training on defendant's policies and procedures, and was expected to know the policy and procedure information contained in the Operations Manual. (Id. at ¶¶ 22, 23.)

The Operations Manual addresses requests for leave made under the FMLA:

**Leaves of Absence**

For requests for Family Medical Leave (FMLA), call your Personnel Manager and request Family Medical Leave paperwork with as much advance notice as possible.

(Id. at ¶ 26; Doc. 25-4 at 5.)

The Operations Manual also lists grounds for immediate dismissal, including:

**For line boat personnel only:**

Departing the vessel without proper relief or authorization by the Captain, other officer in charge, or the Personnel Department will be treated as a resignation.

(Doc. 25 at ¶ 27; Doc. 25-4 at 6.)

## Events from March 29, 2008 to April 14, 2008

On March 29, 2008, plaintiff boarded the John H to commence another voyage. (Doc. 25 at ¶ 28; Doc. 29 at ¶ 1.) At that time, plaintiff knew that his 90-year-old grandmother, Elma J. Ruble, was ill. (Doc. 25 at

¶ 29.) Due to significant strife within his family, plaintiff was raised primarily, and for a number of years exclusively, by his grandmother. (Doc. 29 at ¶ 2.)

Upon boarding the John H, plaintiff told the chief engineer that his grandmother was ill, and that he wanted to provide advance notice that he might need to leave the vessel. (Id. at ¶¶ 3, 4.) Plaintiff also told the captain of the John H, Nate Wolfe, that his grandmother was ill and that he may need to take leave during the voyage. (Id. at ¶ 5.)

On Thursday, April 10, 2008, plaintiff received a telephone call from his family, informing him that his grandmother had been diagnosed with terminal cancer and was not expected to live more than a week. (Doc. 25 at ¶ 31; Doc. 29 at ¶ 15.) That day, plaintiff told Wolfe that his grandmother was ill and that he wanted to leave the John H and return home to see his grandmother. (Doc. 25 at ¶ 32.) Wolfe instructed plaintiff to e-mail the Personnel Manager responsible for staffing vessels, Michelle Wittman. (Id. at ¶¶ 20, 32.)

Either that day or the next day, plaintiff called Wittman and told her that his grandmother was ill, and that he needed to go see her before she died because she had taken care of him. (Id. at ¶ 33; Doc. 29 at ¶¶ 6, 7.) Wittman then called the other assistant engineer for the John H, Kirk Jones, at his home in Kentucky, to see if he could relieve plaintiff. (Doc. 25 at ¶ 35.) Plaintiff called Wittman again several times before finally receiving a response that the quickest a replacement could be substituted was Monday, April 14, 2008. (Doc. 29 at ¶ 8.) Plaintiff replied that Monday, April 14, 2008 was the latest he could leave, but that he could wait until then. (Id. at ¶ 9.)

Plaintiff also spoke with Wolfe about his wanting to leave the John H, and Wolfe instructed plaintiff to call the St. Louis Port office. (Doc. 25 at ¶ 36.) Plaintiff then spoke with Porter about wanting to leave the John H. (Id. at ¶ 37.) Porter asked plaintiff if he needed to leave the John H immediately. (Id. at ¶ 39.) Plaintiff said that he did not, and they agreed to discuss the situation on Monday, April 14, 2008. (Id.) Porter told plaintiff to keep him informed over the weekend if the situation changed. (Id. at ¶ 40.)

On Saturday, April 12, 2008, plaintiff asked Wolfe if there were any FMLA materials on the vessel. (Id. at ¶ 41.) Plaintiff and Wolfe looked for FMLA materials, but did not find any. (Doc. 25 at ¶ 41.) No such forms were maintained aboard defendant's vessels. (Id. at ¶ 46.) Under defendant's policies, once an employee made an FMLA leave request to the Personnel Manager or Crew Dispatcher, the necessary documents would be forwarded to the employee for completion. (Id. at ¶ 45.)

Also that day, plaintiff booked a flight departing from New Orleans on Monday April 14, 2008, despite not having gotten confirmation that relief would be available to replace him Monday. (Id. at ¶ 48.) Over the weekend, plaintiff did not tell Porter, Wittman, or anyone in the Port office that he booked the flight. (Id. at ¶ 49.) Plaintiff's grandmother's condition remained unchanged over the weekend of April 12-13, 2008. (Id. at ¶ 44.)

On Monday, April 14, 2008, Porter told plaintiff that his replacement, Jones, would arrive the next day. (Doc. 25 at ¶ 50.) Plaintiff told Wolfe that he would not wait until the next day, that he would not reschedule his flight, and that he was leaving the John H that day. (Id. at ¶ 51; Doc. 29 at ¶ 17.) Plaintiff said that he felt he had given defendant sufficient notice of four days to find a replacement, and that his grandmother had been diagnosed with only a week to live. (Doc. ¶ 29 at 16.) Plaintiff had not checked to see whether he could change his flight to Tuesday, April 15, 2008. (Doc. 25 at ¶ 53.) At the time, plaintiff's grandmother was in stable condition at St. John's Hospital in Springfield, Illinois. (Id. at ¶ 52.)

Plaintiff left the John H that day, knowing that he did not have authorization to do so and that, as a result of his unauthorized absence, his employment with defendant would be terminated. (Id. at ¶¶ 54, 55.) When plaintiff left, the John H was on the Mississippi River, 50 miles outside of the New Orleans port. (Id. at ¶¶ 56, 57.) Plaintiff was taken to the shore on a boat, and then took a 50-mile cab ride to the airport in New Orleans. (Id. at ¶¶ 58-59.)

## Events from April 14, 2008 to May 18, 2008

On April 14, 2008, plaintiff boarded a 2:00 pm flight from New Orleans to Saint Louis, and arrived in Saint Louis late that evening. (Doc. 25 at ¶ 60; Doc. 29 at ¶ 19.) After arriving, plaintiff's girlfriend picked him up and drove him to Hannibal, Missouri, where plaintiff's car was stored. (Doc. 25 at ¶ 62; Doc. 29 at ¶ 21.) Plaintiff slept for four or five hours before leaving for his grandmother's hospital in Springfield, Illinois. (Doc. 29 at ¶¶ 22, 23.) As a result, plaintiff did not arrive in Springfield until Tuesday, April 15, 2008. (Doc. 25 at ¶ 61.)

Before becoming ill, plaintiff's grandmother lived by herself in Pittsfield, Illinois. (Doc. 25 at ¶ 66.) Most of her children and grandchildren lived nearby and provided her with care and support. (Id. at ¶ 67.) Her daughter, Greta Shipley, had power of attorney and arranged for her to stay at the hospital in Springfield. (Id. at ¶ 68.) Plaintiff's grandmother was admitted to St. John's Hospital in Springfield on March 29, 2008, and was discharged as "stable" on April 17, 2008. (Id. at ¶ 69.) At the time, the preliminary report of her mammogram did not show breast cancer, although the final result was pending. (Id.) When she was not in the hospital, plaintiff's grandmother stayed with Shipley, who was primarily responsible for her care. (Doc. 25 at ¶ 70; Doc. 29 at ¶ 25.) Plaintiff's grandmother did not live with plaintiff at his home near or before her death. (Id. at ¶ 71.)

Plaintiff stayed by his grandmother's side throughout her hospital stay, providing psychological support, comfort, and care. (Doc. 29 at ¶ 24.) Plaintiff also spent almost every day with his grandmother while at Shipley's house. (Id. at ¶ 24.)

A few days after moving to Shipley's house, plaintiff's grandmother was readmitted to a different hospital. (Id. at ¶ 26.) Plaintiff stayed with his grandmother every day at this hospital, providing care and support. (Id. at ¶ 27.) Plaintiff's grandmother remained at the hospital until she passed away on May 18, 2008. (Doc. 25 at ¶¶ 64, 67; Doc. 29 at ¶¶ 26, 27.)

## IV. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir. 2007). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Devin, 491 F.3d at 785. A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the nonmoving party. Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings or in general denials of the movant's assertions, but must instead proffer admissible evidence that demonstrates a genuine issue of material fact. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003); Essex Ins. Co. v. Stone, No. 1:09 cv 1 SNLJ, 2010 WL 330328, at *2 (E.D. Mo. Jan. 21, 2010).

## V. DISCUSSION

The FMLA was enacted "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity." 29 U.S.C. § 2601(b)(1). Under the FMLA, an "eligible employee" is entitled to up to 12 workweeks of leave during any 12-month period "to care for . . . [a] parent[] of the employee, if such . . . parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA makes it unlawful for an employer to deny or to interfere with these rights, 29 U.S.C. § 2615(a)(1), and to discriminate against employees for asserting them, 29 U.S.C. § 2615(a)(2).

**A. Complaint**

In his complaint, plaintiff does not specify whether he alleges an interference claim, 29 U.S.C. § 2615(a)(1), or a retaliation claim, 29 U.S.C. § 2615(a)(2). Defendant asserts that plaintiff's complaint raises only an interference claim, while plaintiff argues that he raised both an interference and a retaliation claim.

A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007) (internal quotation omitted); Fed. R. Civ. P. 8(a)(2). Thus, the court must examine the "grounds upon which" plaintiff's allegations rest to determine whether plaintiff raised an interference and a retaliation claim. See Huggins v. FedEx Ground Package Sys., Inc., 592 F.3d 853, 862 (8th Cir. 2010).

In his complaint, plaintiff alleges that defendant unlawfully denied his FMLA leave request and terminated his employment by construing his FMLA leave as an unauthorized absence. (Doc. 1 at ¶¶ 17, 18.)

Plaintiff's allegations do not "fall clearly into either (a)(1) [interference] or (a)(2) [retaliation]." Stallings v. Hussmann Corp., 447 F.3d 1041, 1051 (8th Cir. 2006). Noting the difficulty of classifying these claims, the Eighth Circuit has advised that "[t]he difference between the two claims is that the interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent." Id. In his complaint, plaintiff does not allege that defendant terminated his employment as retaliation for taking or attempting to take FMLA leave; plaintiff's complaint raises no fact-based allegations that defendant's actions were motivated by an impermissible retaliatory animus. See id. (employer's intent must be shown for retaliation claim but not for interference claim). Thus, plaintiff's complaint does not notify defendant of a possible retaliation claim. See Dollar v. Smithway Motor Xpress, Inc., --- F. Supp. 2d ----, 2011 WL 1399800, at *9 (N.D. Iowa 2011) (plaintiff raised only an interference claim, and not a retaliation claim, where she never actually took FMLA leave).

Therefore, plaintiff's complaint must be construed as raising only a claim of interference with FMLA-protected rights.

## B. Interference

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the [FMLA]." 29 U.S.C. § 2615(a)(1). Generally, "a plaintiff asserting an FMLA interference claim must establish that (1) [plaintiff] was an eligible employee, (2) the defendant was [plaintiff's] employer, (3) [plaintiff] was entitled to leave under the FMLA, (4) [plaintiff] gave the defendant notice of [his] intent to take such leave, and (5) the defendant denied [plaintiff] an FMLA benefit (or benefits) to which [he] was entitled." Lopez v. St. Paul Pub. Schs., Civ. No. 10-148 (RHK/JJK), 2011 WL 13957, at *5 (D. Minn. Jan. 4, 2011); see also Ponder v. Verizon N., Inc., No. 4:09-CV-1763 CAS, 2010 WL 4868080, at *4 (E.D. Mo. Nov. 23, 2010); Eighth Circuit Model Jury Instruction § 5.81B (2010). The plaintiff need not establish the defendant's intent. Stallings, 447 F.3d at 1050.

Defendant's grounds for summary judgment are directed at the substance and timeliness of plaintiff's request for FMLA-protected leave.

## B. FMLA Leave Request

To invoke the benefits of the FMLA, an employee "need not invoke the FMLA by name." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 1000 (8th Cir. 2011). Rather, the employee need only "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). "Once an employer is put on notice that an employee is claiming an entitlement to FMLA leave, the employer's duties are triggered." Parsons v. Principal Life Ins. Co., 686 F. Supp. 2d 906, 912 (S.D. Iowa 2010); Wierman, 638 F.3d at 1000. Upon receipt of adequate and timely notice, the employer must either authorize the FMLA leave request or make inquiries and requests for medical certifications. 29 C.F.R. §§ 825.302(c), 825.303(b); Parsons, 686 F. Supp. 2d at 913.

The FMLA's notice requirements are not onerous. Schoonover v. ADM Corn Processing, No. 06-CV-133-LRR, 2008 WL 282343, at *17 (N.D. Iowa Jan. 31, 2008); Rask v. Fresenius Med. Care N. Am., 509 F.3d 466, 474 (8th Cir. 2007) (noting that it is "very easy" for an employee to give adequate notice). "The employer's duties arise when the employee provides enough information to put the employer on notice that the employee *may be* in need of FMLA leave." Wierman, 638 F.3d at 1000. (emphasis added) (internal quotation omitted). "[T]he adequacy of an employee's notice requires consideration of the totality of the circumstances, and is typically a jury question." Murphy v. FedEx Nat'l LTL, Inc., 618 F.3d 893, 903 (8th Cir. 2010) (internal citation omitted); see also Scobey v. Nucor Steel-Arkansas, 580 F.3d 781, 787 (8th Cir. 2009) (totality of the circumstances); Phillips v. Mathews, 547 F.3d 905, 909 (8th Cir. 2008) (question of fact for the jury).

**1. In Loco Parentis**

Under the FMLA, a "parent" includes "the biological parent of an employee or an individual who has stood in loco parentis to an employee when the employee was a son or daughter." 29 U.S.C. § 2611(7); 29 C.F.R. § 825.122(b). "Persons who are in loco parentis include those with day-to-day responsibilities to care for and financially support a child or, in the case of an employee, who had such responsibility for the employee when the employee was a child. A biological or legal relationship is not necessary." 29 C.F.R. § 825.122(c)(3).

In its reply memorandum, defendant "does not dispute that [p]laintiff's grandmother may have raised him as a child" and thus qualifies as a "parent" under the FMLA for purposes of the instant motion for summary judgment. See (Doc. 28 at 7; Doc. 29 at ¶ 2.) Instead, defendant challenges whether plaintiff sufficiently informed it that his grandmother took care of him as a child.

When an employee seeks to invoke FMLA benefits based on an in loco parentis relationship, the employee must provide his employer with sufficient facts indicating that such a relationship may exist. See Sherrod v. Philadelphia Gas Works, 57 Fed. App'x 68, 72-73 (3d Cir. 2003) ("Since [the employee] did not initially tell her employer that her

grandmother had raised her, she failed to sufficiently explain her reasons for the needed leave so as to allow the employer to determine that her request was covered by the FMLA."); Abousaidi v. Mattress Discounters Corp., No. 1:05CV1142 (JCC), 2005 WL 3797366, at *2 (E.D. Va. Dec. 8, 2005). Otherwise, the employer could not know that the employee's leave may be secured by the FMLA. See Wierman, 638 F.3d at 1000 (the employer's duties do not arise until the employee gives sufficient information to show that he may be in need of FMLA leave).

The parties dispute the statements by which plaintiff informed defendant of his relationship with his grandmother. Plaintiff contends that he informed the chief engineer of "the reason for his close connection with his grandmother," and that he told Wittman and Wolfe "facts that showed his grandmother was in loco parentis to him." (Doc. 29, Ruble Aff. at ¶¶ 3, 7.) Defendant argues that plaintiff's affidavit cannot be used to create a genuine issue of material fact because it is contradicted by his prior deposition testimony.

In his deposition, plaintiff testified to his conversation with the chief engineer, Will Brown, upon boarding the John H:

[QUESTION]: When did you speak to Mr. Brown?

[ANSWER]: Five minutes after getting on the boat.

[QUESTION]: What did you say to Mr. Brown and what did he say to you?

[ANSWER]: I — I don't remember what he said to me, but I told him that I just got a call from family; that my grandmother was sick, and that if it wound up being something I was going to have to go home.

[QUESTION]: Did you say anything more than that?

[ANSWER]: No.

(Doc. 25-2, Ruble Dep. at 63.) Plaintiff's deposition testimony indicates that he made no mention of his close relationship with his grandmother. Therefore, plaintiff's deposition testimony is contradicted by his affidavit, and cannot be used to create issues of fact in opposition of summary judgment. City of St. Joseph, Mo. v. Sw. Bell.

Tel., 439 F.3d 468, 475-76 (8th Cir. 2006); Brehmer v. Xcel Energy, Inc., Civ. No. 06-3294 (JNE/JJG), 2008 WL 3166265, at *10 n.2 (D. Minn. 2008).

In his deposition, plaintiff also testified to his conversation with Wittman:

| [QUESTION]: | Do you recall specifically anything else that was discussed during the conversation you had on the evening of April 20th with Ms. Wittman? |
|---|---|
| [ANSWER]: | That, basically, I told her what I knew about my grandmother, and I'm sure I said something about, you know, I need to get home to my grandma; **my grandma took care of me**, you know, I love her, yadda yadda yadda. I — I've got to get to see my grandma. I want to see her before she goes. I want to see her when she's in her right mind. |

(Doc. 25-2, Ruble Dep. at 16-17) (emphasis added). This testimony does not directly contradict plaintiff's affidavit so as to preclude its consideration. City of St. Joseph, 439 F.3d at 476 ("[W]hen the affiant's affidavit does not actually contradict his earlier testimony, the district court should not strike the affidavit from the record.").

Thus, factual disputes exist regarding the information provided by plaintiff concerning his relationship with his grandmother. Plaintiff's deposition testimony—that he told Wittman that his grandmother "took care of [him]," along with plaintiff's affidavit testimony—that he told Wittman and Wolfe "facts that showed his grandmother was in loco parentis to him," may have informed defendant of plaintiff's close relationship with his grandmother, such that plaintiff's leave request may have been protected by the FMLA. See Dillon v. Maryland-Nat'l Capital Park & Planning Comm'n, 382 F. Supp. 2d 777, 787-89 (D. Md. 2005) (employee's statements concerning her relationship with her grandmother created factual issue as to whether she sufficiently informed her employer that her leave may be protected by the FMLA).

### 2. "To Care For"

"The FMLA does not protect mere visitation" of those family members protected by the FMLA. Brehmer, 2008 WL 3166265, at *9. Rather, the

employee must request leave "to care for" those close family members. 29 U.S.C. § 2612(a)(1)(C). The regulations define "to care for" broadly, so as to "include[] providing psychological comfort and reassurance which would be beneficial to a . . . parent with a serious health condition who is receiving inpatient . . . care." 29 C.F.R. § 825.124(a); Fioto v. Manhattan Woods Golf Enters., LLC, 270 F. Supp. 2d 401, 406 (S.D.N.Y. 2003), aff'd 123 Fed. App'x 26 (2d Cir. 2005).

Defendant does not challenge that plaintiff may have provided "care for" his grandmother, as protected by the FMLA. (Doc. 28 at 7, 8.) Rather, defendant argues that plaintiff failed to give notice that he needed to provide care for his grandmother, and instead stated only that he wanted to visit his grandmother before she passed away.

Defendant argues that plaintiff's deposition testimony, in which plaintiff testified that he repeatedly said he needed and wanted "to see" his grandmother because she was going to pass away soon, did not provide notice that he needed to leave to care for his grandmother. See Doc. 25-2, Ruble Dep. at 15-17. Faced with similar statements, courts have found the employee's statements sufficient to avoid summary judgment. See Beqiri v. Nelco, Inc., Civil Action No. 3:05-CV-803-H, 2007 WL 1652022, at *3 (W.D. Ky. June 4, 2007) (employee's statement that his mother was "sick in the hospital" and that he wanted "to go and see her" created sufficient disputed fact so as to preclude summary judgment); Plumley v. S. Container, Inc., No. 00-140-P-C, 2001 WL 1188469, at *9-10 (D. Me. Oct. 9, 2001) (employee's statements of "there's problems with my dad. I'm going to see him" and that the employee "was going to Boston to see [his] father who had a serious illness and was hospitalized" created a factual issue regarding the sufficiency of the employee's notice).

Plaintiff's statements may have been sufficient to trigger defendant's duties under the FMLA. Plaintiff was not required to provide all the details necessary to show he was entitled to FMLA leave; he was required only to provide information sufficient to inform defendant that he *may be* entitled to FMLA leave. Phillips, 547 F.3d at 909. Further, that Wolfe helped plaintiff search for FMLA forms while on the John H,

which might also suggest that defendant was aware that plaintiff's leave request might be secured by the FMLA.[3]

Thus, factual disputes exist concerning the substance of his FMLA leave, specifically, whether plaintiff provided defendant with sufficient information to indicate his close relationship with his grandmother and that he needed to leave to care for her. See Megonnell v. Infotech Solutions, Inc., Civil Action No. 1:07-cv-02339, 2009 WL 3857451, at *6 (M.D. Pa. Nov. 18, 2009) (summary judgment inappropriate where "the parties dispute[d] the precise content of the notice given . . . and whether [the employer] was given sufficient information to alert him that [the plaintiff] was requesting leave that would fall under the protections of the FMLA").

Therefore, summary judgment is not appropriate on these grounds.

### 3. Timeliness

To invoke the benefits of the FMLA, an employee must timely notify his employer of his need for FMLA leave. 29 C.F.R. § 825.302(a). If the need is foreseeable, the employee must give notice at least 30 days before taking FMLA leave, or "as soon as practicable" if 30 days notice is not practicable. Id. If the need is unforeseeable, notice must be given to the employer "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Barring extraordinary circumstances, "as soon as practicable" means that notice must be given within one or two working days of learning of the need for leave. Phillips, 547 F.3d at 909; 29 C.F.R. § 825.302(b).

On April 10, 2008, plaintiff initially notified defendant of his need for FMLA leave. (Doc. 25 at ¶ 35.) This was the same day on which he learned he needed to leave. (Id. at ¶ 31; Doc. 29 at ¶ 15.) When he was told that the quickest a replacement could be substituted would be Monday, April 14, 2008, plaintiff replied that he could wait until then, but that Monday was the latest he could stay. (Doc. 29 at ¶¶ 8, 9.)

---

[3]The parties disagree about this event in some respects, but appear to agree generally that plaintiff claims that Wolfe helped him look for FMLA materials that day. (Doc. 25 at ¶ 41.)

Therefore, sufficient facts support plaintiff's contention that he gave defendant timely notice of his need for FMLA leave so as to avoid summary judgment.

**D. Non-Discriminatory Reason for Termination**

"An employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave." Estrada v. Cypress Semiconductor (Minnesota) Inc., 616 F.3d 866, 871 (8th Cir. 2010). "[W]here an employer's reason for dismissal is insufficiently related to FMLA leave, the reason will not support the employee's recovery." Stallings, 447 F.3d at 1051. Thus, for example, an employee's failure to comply with her employer's call-in policy during FMLA leave was a permissible ground for termination. Bacon v. Hennepin Cnty. Med. Ctr., 550 F.3d 711, 716 (8th Cir. 2008).

Defendant has not identified a reason for termination not connected with plaintiff's FMLA leave. While defendant's absence policy is unequivocal that "[d]eparting the vessel without proper relief or authorization by the Captain, other officer in charge, or the Personnel Department will be treated as a resignation," plaintiff contends that he should have been granted FMLA leave and thus, his absence would not have been treated as unauthorized.

Therefore, plaintiff's unauthorized absence from the vessel is not independent from his alleged FMLA leave request or from defendant's alleged interference with plaintiff's FMLA rights.

## VI. CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendant American River Transportation Company for summary judgment (Doc. 23) is hereby denied.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on June 29, 2011.